# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-3352

_____

In re: Korley B. Sears,

*Debtor.*

------------------------------

Korley B. Sears,

*Appellant,*

v.

Rhett R. Sears; Rhett R. Sears Revocable Trust; Ronald H. Sears; Ron H. Sears
Trust; Dane Sears,

*Appellees,*

U.S. Trustee,

*U.S. Trustee.*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: November 15, 2016
Filed: July 18, 2017

_____

Before COLLOTON, BEAM, and GRUENDER, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Korley Sears, a Chapter 11 debtor-in-possession, appeals a decision of the district court[1] affirming the bankruptcy court's[2] grant of summary judgment for several creditors. The judgment allowed proofs of claim totaling over $5.2 million. We conclude that there is no merit to Korley's several objections, so we affirm.

I.

In 2007, a group of relatives and related entities owned a significant portion of the shares of a company called AFY, Inc. We refer to these parties—Rhett Sears, the Rhett R. Sears Revocable Trust, Ronald Sears, the Ron H. Sears Trust, and Dane Sears—collectively as "the Searses." Pursuant to a stock sale agreement, the Searses sold their shares of AFY to the company and Korley Sears. In return, Korley signed promissory notes payable to the Searses, which were to be paid in annual installments.

Ronald and Dane Sears were employees of AFY. The sale agreement included a provision requiring them to continue as AFY employees and to maintain loyalty toward AFY and its management. AFY made the first annual installment payments to the Searses pursuant to the sale agreement and promissory notes, but Korley and AFY failed to make further required payments.

_____

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

[2]The Honorable Thomas L. Saladino, Chief United States Bankruptcy Judge for the District of Nebraska.

In 2009, AFY's primary lender, Farm Credit Services, withdrew financing. In 2010, AFY and Korley each filed for bankruptcy under Chapter 11 of the Bankruptcy Code. The Searses filed proofs of claim—that is, "a written statement setting forth a creditor's claim," Fed. R. Bankr. P. 3001(a)—in Korley's bankruptcy. They asserted claims for over $5.2 million based on the debt owed under the sale agreement and promissory notes. Korley, as debtor-in-possession, objected on numerous grounds, including that the sale agreement was never a valid contract. He also asserted that even if the agreement was valid, his liability was discharged when the Searses allegedly breached their duty of loyalty and their duty of good faith and fair dealing.

Following a hearing on Korley's objections, the Searses moved for summary judgment to allow their claims. Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(a). The bankruptcy court granted the motion. The court first concluded that Korley's objections were barred by the doctrine of claim preclusion because they could have been litigated in AFY's earlier bankruptcy proceeding. Alternatively, the court rejected the objections on the merits. The district court affirmed the rulings of the bankruptcy court. As a second court of review, we review the bankruptcy court's grant of summary judgment *de novo*, applying the same standards as the district court. *Contemporary Indus. Corp. v. Frost*, 564 F.3d 981, 984 (8th Cir. 2009). Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(a).

II.

Korley disputes both rationales offered by the bankruptcy court. Because we agree with the bankruptcy court that Korley's objections to the proofs of claim lack merit, we will affirm on that basis.

Title 11 U.S.C. § 501 provides for the filing of claims in bankruptcy, and § 502 governs the process for determining whether claims are allowed. A "claim" typically is a "right to payment" from the debtor, and it includes rights that are disputed or contingent. 11 U.S.C. § 101(5)(A). A claim that is filed under § 501 is deemed "allowed" against the debtor unless a party in interest objects and the claim implicates an exception listed in 11 U.S.C. § 502(b). *See* 11 U.S.C. § 502(a); *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 449 (2007). If a proof of claim follows certain requirements under Federal Rule of Bankruptcy Procedure 3001, then it is *prima facie* evidence of the claim's validity. Fed. R. Bankr. P. 3001(f).

Korley first argues that the Searses do not have claims under the sale agreement, if it is viewed as a single contract together with the promissory notes, because it is an executory contract that has not been rejected. *See* 11 U.S.C. § 365. An executory contract under the Bankruptcy Code is a contract where the obligations of both parties "are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *In re Interstate Bakeries Corp.*, 751 F.3d 955, 962 (8th Cir. 2014) (en banc) (quotation omitted). Korley contends that the sale agreement is an executory contract because Ronald, Dane, and Rhett Sears have ongoing duties of loyalty and good faith and fair dealing to AFY and to him. He argues that Ronald and Dane have duties under the sale agreement, and that Rhett was obligated under Nebraska law not to participate knowingly in any breaches by Ronald and Dane.

Assuming for the sake of analysis that the sale agreement and promissory notes should be considered one contract under Nebraska law, we are not convinced by Korley's contention. The primary purpose of the sale agreement was to effect the sale of the Searses' stock to AFY and Korley. The Searses substantially performed their obligations by surrendering their stock to Korley and AFY. Any subsequent failure by them to maintain loyalty to AFY and Korley would not excuse Korley's

performance under the sale agreement. The Searses' duties of loyalty and good faith and fair dealing did not go to the "root or essence of the contract." *Id.* at 963 (quotation omitted). The sale agreement is thus not executory.

Korley next objects to the Searses' proofs of claim based on 11 U.S.C. § 502(b)(1). Section 502(b)(1) disallows claims that are "unenforceable against the debtor." *See Travelers*, 549 U.S. at 450. Korley asserts a variety of contractual defenses to the Searses' proofs of claim. We apply Nebraska law to resolve these issues. *See id.* at 450-51.

Korley argues that the Searses breached their duties of loyalty and good faith and fair dealing under the sale agreement by helping to appoint a trustee and then assisting the trustee to liquidate AFY's assets. He also contends that his obligations under the sale agreement and promissory notes were discharged, because performance was impossible after AFY was liquidated, and because liquidation frustrated the contract's purpose. He next asserts that there was a failure of consideration under the contract, because the Searses helped to liquidate AFY. This latter claim is another way of describing an alleged failure of performance. Restatement (Second) of Contracts § 237 cmt. a. (1981).

None of these contractual defenses has merit, because all of the challenged conduct occurred after Korley filed for bankruptcy. When a party in interest objects to a creditor's claim, the bankruptcy court "shall determine the amount of such claim . . . *as of the date of the filing of the petition*." 11 U.S.C. § 502(b) (emphasis added). Post-petition conduct thus cannot justify disallowing a proof of claim. *See In re Flanagan*, 503 F.3d 171, 178-79 (2d Cir. 2007). Korley argues otherwise based on 11 U.S.C. § 558, a provision granting the bankruptcy estate the benefit of any defense available to the debtor, but § 558 simply "preserves to the [d]ebtor the defenses it would have had prepetition." *In re Papercraft Corp.*, 127 B.R. 346, 350 (Bankr. W.D. Pa. 1991).

Korley also asserts contractual defenses of impossibility, frustration, and failure of performance based on the fact that AFY's primary lender, Farm Credit Services, withdrew financing from AFY before Korley petitioned for bankruptcy. The impossibility and frustration defenses apply when there is an "occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made." *Turbines Ltd. v. Transupport, Inc.*, 825 N.W.2d 767, 775-76 (Neb. 2013) (quoting Restatement (Second) of Contracts §§ 261, 265 (1981)). These defenses fail here, because Farm Credit Services had a legal right to withdraw its line of credit under certain circumstances, and there is no evidence that the contracting parties assumed that the lender was forbidden to exercise its right. The failure-of-performance defense cannot prevail because Farm Credit's withdrawal of credit had nothing to do with the Searses' performance of their obligations under the contract.

Korley next argues that there was no mutual assent to the sale agreement because he did not believe that AFY was also obligated to pay the Searses for their stock. *See* Restatement (Second) of Contracts § 20 (1981). The agreement, however, lists both AFY and Korley as the "Buyers" under the sale agreement who must pay the purchase price to the Sellers. Consistent with this understanding, AFY, not Korley, made the first annual installment payments to the Searses on the notes. We see no merit to Korley's argument that the sale agreement lacked mutual assent.

Korley contends that the bankruptcy court retains power in equity to reject proofs of claim based on post-petition inequitable conduct, and should have done so here. He did not raise this argument in the bankruptcy court, so the point is forfeited, and there is no plain error that might warrant relief. Korley cites the pre-Code decision of *Pepper v. Litton*, 308 U.S. 295, 307-08 (1939), where the Court upheld a bankruptcy court's judgment disallowing a claim on equitable grounds. We question whether the *Pepper* approach survives under the modern Bankruptcy Code, because § 502(b) provides that claims will be allowed except as enumerated in that section, and inequitable conduct is not an enumerated ground. *See* 4 *Collier on*

*Bankruptcy* ¶ 502.03[11] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2016). In *Travelers*, the absence of textual support was "fatal" to a judicially-created rule that disallowed a claim for a reason not enumerated in § 502(b).   549 U.S. at 452. At a minimum, the bankruptcy court did not commit plain error when it declined to disallow a claim based on a ground not enumerated in the statute.

## III.

Korley also raises a procedural argument regarding the Searses' proofs of claim.  Korley argues that the Searses' proofs of claim did not include an "itemized" statement of interest, as required by Federal Rule of Bankruptcy Procedure 3001(c)(2)(A) and Official Form 10.  Rule 3001(f) provides that a proof of claim that is executed and filed in accordance with the rules is *prima facie* evidence of the validity and amount of the claim.  Korley contends that the Searses' proofs of claim did not comply with the rules, and that the bankruptcy court thus erred in treating the them as *prima facie* evidence of validity and amount.

A claimant's failure to comply with Rule 3001(c)(2)(A) or Official Form 10, however, is not by itself a reason to disallow a claim.  Section 502(b) enumerates the grounds on which a proof of claim may be disallowed, and non-compliance with Rule 3001 is not one of them.  The bankruptcy court has authority to sanction a creditor who fails to submit supporting information as directed by the rules of procedure.  Fed. R. Bankr. P. 3001(c)(2)(D).  But a failure to itemize interest in accordance with the rules means only that the proof of claim is not *prima facie* evidence of the claim's validity and amount.  *Accord In re Dove-Nation*, 318 B.R. 147, 152 (B.A.P. 8th Cir. 2004); *In re Brunson*, 486 B.R. 759, 769-70, 772-73 (Bankr. N.D. Tex. 2013); *In re MacFarland*, 462 B.R. 857, 879-81 (Bankr. S.D. Fla. 2011).

The bankruptcy court treated the proofs of claim as *prima facie* evidence of validity, but even assuming for the sake of analysis that they were not entitled to that

status, we may affirm the judgment on any ground supported by the record. *Holt v. Howard*, 806 F.3d 1129, 1132 (8th Cir. 2015). Even a claim that lacks *prima facie* evidence of validity under Rule 3001(f) can present at least some evidence of a demand for payment from the bankruptcy estate. *See Dove-Nation*, 318 B.R. at 152. Here, the creditors supported their proofs of claim with attached exhibits that documented Korley's debt, although arguably not precisely in the manner contemplated by the rules. In that situation, a debtor must "assert a substantive basis for disallowance expressly stated in § 502 and come forward with some evidence to disallow the claim for that reason." *Brunson*, 486 B.R. at 769. For example, the debtor might submit a signed affidavit averring that the claim was not owed or that the debt had been satisfied. *See In re Muller*, 479 B.R. 508, 514 (Bankr. W.D. Ark. 2012).

Korley did not mount that sort of defense, and his stated objections lacked merit: he advanced no persuasive argument that the Searses' claims should be disallowed under any of the § 502(b) exceptions. Nor does he contend that the amounts asserted in the proofs of claim are incorrect. The bankruptcy court thus did not err in allowing the Searses' claims despite a potential shortcoming in the itemization of interest.

\* \* \*

The judgment of the bankruptcy court is affirmed.

_____